UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES ROBERT GARNER, an individual,

Plaintiff,

v.

THE CITY OF FEDERAL WAY, a municipality, and MARTIN NORDBY, in his official and individual capacity,

Defendants.

CASE NO. C06-1739-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 17), Plaintiff's Response and Cross Motion for Summary Judgment (Dkt. No. 21), and Defendants' Reply (Dkt. No. 23). Having considered the parties' briefing and supporting documentation, and finding oral argument unnecessary, the Court hereby finds and rules as follows.

**I.    BACKGROUND**

Plaintiff is an individual property owner in what is now the City of Federal Way. (Defs.' Mot. 5 (Dkt. No. 17).) Defendant Martin Nordby was the City of Federal Way's code compliance officer from 1990 through 2007. (*Id*. at 4). In 1976, Plaintiff purchased a house located south of Sea-Tac Airport as part of a noise abatement program, and physically moved the structure to its current location. (Garner Dep. 9–10 (Dkt. No. 19 at 4–5).) In 1991, Federal Way incorporated this property into the City. (Defs.'

ORDER – 1

Mot. 5 (Dkt. No. 17).)

Apparently, Plaintiff encountered construction difficulties upon relocating the house to its current location, leading to a separate lawsuit with the mover in approximately 1980. (Garner Dep. 13 (Dkt. No. 19 at 8)).) Upon incorporation of the property by the City of Federal Way in 1991, Plaintiff was issued a notice of building code violations and failure to apply for required permits. (Defs.' Mot. 5 (Dkt. No. 17).) While the details of the dispute are not especially clear from the record before the Court, it appears that over the following decade, the structure remained in an uninhabitable condition due to a disagreement between the parties as to Plaintiff's compliance obligations. (*Id*. at 5–6; Garner Dep. 28 (Dkt. No. 19 at 19).)

On July 22, 2003, Defendant Nordby posted a "notice of violation and order to correct violation" on Plaintiff's property, and mailed him a separate copy on the same date. (Nordby Decl. ¶¶ 9–10 (Dkt. No. 18).) Plaintiff states that he did not see the notice posted on his property, which was located two miles from his place of residence, but received it by certified mail on July 25, 2003. (Garner Dep. 39, 41 (Dkt. No. 19 at 23–24).) The notice explained that Plaintiff could "appeal the Notice and Order to the Federal Way Hearings Examiner by filing a written notice of appeal with the City Clerk within 14 calendar days of the date of issue of the Notice and Order." (Notice and Order (Dkt. No. 18 at 5–8).) Plaintiff filed an appeal on August 6, 2003. (Defs.' Mot. 16 (Dkt. No. 17).) In a letter dated August 13, 2003, Defendant Nordby informed Plaintiff that the appeal was untimely, and therefore would be denied. (Nordby Letter (Dkt. No. 18 at 9).)

On August 14, 2006, Plaintiff filed the present lawsuit against the City of Federal Way in state court; the City removed the action to federal court on December 5, 2006. (Notice of Removal 2–3 (Dkt. No. 1).) Plaintiff's cause of action is entitled "Denial of Due Process and Violation of § 1983." (Compl. 2 (Dkt. No. 1 at 7).) The factual allegations in the Complaint exclusively concern the July 22, 2003 "notice of violation and order to correct violation" and the rejected appeal, as set forth above. (*Id*.).

ORDER – 2

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). There is no genuine issue for trial unless there is sufficient evidence to support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 250. The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 257. Furthermore, the Court must draw all reasonable inferences in favor of the nonmoving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994).

In addition to demonstrating that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim for which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Preliminary Issues

#### i. Over-length Briefing

Local Civil Rule 7(e)(3) states: "Motions for summary judgment . . . and briefs in opposition shall not exceed twenty-four pages. Reply briefs shall not exceed twelve pages." Over-length briefing is "disfavored," and may be filed only with leave from the Court. LOCAL CR 7(f). Defendants' Motion for Summary Judgment is twenty-six pages and was filed without permission from the Court. Therefore, in resolving the cross motions for summary judgment in this case, the Court declines to consider the final two pages of Defendants' motion.

ORDER – 3

ii.     Issues for Adjudication

The parties devote a substantial portion of their briefing to describing a thirty year history of the relocated house that is the subject of this lawsuit. It is apparent that from Defendants' perspective, Plaintiff's compliance with Federal Way building codes and regulations since 1991 has been less than satisfactory. (Defs.' Mot. 5–8 (Dkt. No. 17).) It is also clear that Plaintiff has his own set of grievances with the City, including an apparent belief that the Federal Way building code conflicts with Washington State law. (Garner Dep. 48 (Dkt. No. 19 at 27); Pl.'s Resp. 3 (Dkt. No. 21).) These allegations are largely immaterial to issue before the Court.

It is evident from the Complaint that the conduct on which Plaintiff bases his claim is the denial of his August 6, 2003 appeal. This can be reasonably inferred from the allegations of fact, which exclusively concern the service of the July 22, 2003 "notice of violation and order to correct violation" and the subsequent "letter of denial." (Compl. ¶¶ 3.1–3.7 (Dkt. No. 1).) The short "causes of action" section that follows, which alleges that Defendant Nordby, while "acting under the color of title," violated Plaintiff's "right to due process," with conduct that resulted from Defendant City's "policy, practice, or custom, or a failure to train or properly supervise," *id*. at ¶¶ 4.2–4.4, does not mention any conduct before or since the 2003 appeal.[1] Finally, Plaintiff's Response and Cross Motion for Summary Judgment explicitly and repeatedly locates the due process violation to Plaintiff's inability to get a "fair hearing" due to the denial of his appeal. (Pl.'s Resp. 2, 9 (Dkt. No. 21).)

Because Plaintiff has stated his claim in this way, several of the legal theories hinted at in his briefing are not available for the Court to consider. Defendants correctly observe that "claims for

---

[1] Indeed, it appears that any action prior to the August 2003 appeal denial would be barred by the three year statute of limitations borrowed from 4.16.080(2) of the Revised Code of Washington for Section 1983 actions. *See Nieshe v. Concrete School Dist.*, 127 P.3d 713, 716–17 (2005); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Furthermore, neither of the parties has alleged any interaction since the denial of Plaintiff's appeal.

ORDER – 4

unlawful search and seizure, unlawful taking, equal protection violations, and facial challenges to the Federal Way City Code" were not mentioned in the Complaint and should not be entertained at this juncture. (Defs.' Reply 2 (Dkt. No. 23).) The sole claim for which Plaintiff has sought relief is the denial of due process arising from the rejection of his August 6, 2003 appeal.

### C.  Exhaustion of Administrative Remedies

Defendants assert that Plaintiff has failed to exhaust his administrative remedies by neglecting to bring a Land Use Petition Act ("LUPA") claim in superior court. (Defs.' Mot. 5–7 (Dkt. No. 17).) Indeed, Washington law requires Plaintiffs to exhaust their administrative remedies before bringing as-applied constitutional challenges to government action. *See Presbytery of Seattle v. King Cty.*, 787 P.2d 907, 916–18 (Wash.1990); *Estate of Friedman v. Pierce Cty.*, 768 P.2d 462 (Wash.1989). However, LUPA's provision setting forth the "exclusive means of judicial review of land use decisions" explicitly states that it does not apply to "[c]laims provided by any law for monetary damages or compensation." WASH. REV. CODE 36.70C.030. The Complaint in this case clearly requests a "[m]onetary award for damages" and therefore the judicial review provisions of LUPA are inapplicable. (Compl. 3 (Dkt. No. 1 at 8).) Defendants cite no other administrative avenue that was or is available to Plaintiff, and therefore Plaintiff's claim is properly before this Court.

### D.  Due Process

With the foregoing understanding, the sole issue for the Court is whether the denial of Plaintiff's appeal as untimely was a violation of his constitutional right to due process. The Due Process Clause provides a guarantee of fair procedure, and therefore "[a] § 1983 action may be brought for a violation of procedural due process . . ." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In order to prevail on such claim, a plaintiff must first establish both the deprivation of a cognizable property interest and constitutionally inadequate procedural safeguards. *See*, *e.g.*, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–578 (1972); *Zinermon*, 494 U.S. at 125–130. Regarding constitutionally sufficient

ORDER – 5

due process, the Supreme Court has characterized the inquiry as "a flexible concept that varies with the particular situation." *Zinermon*, 494 U.S. at 127. "The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *see also*, *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 13–16 (1978).

While the question of how much process is owed in a given situation will often require difficult judgment calls at the margins of prevailing doctrine, this case presents no such challenge. Plaintiff does not argue that there was no opportunity to present his grievances, nor does he argue that the appeal procedure set forth in the "notice of violation and order to correct violation" was substantively inadequate. Rather, he appears to argue that Defendants misinterpreted the Federal Way City Code in finding his appeal untimely. Even assuming that a failure by the city to properly apply its own code could constitute a violation of due process, it would not save Plaintiff's claim.

First, it is clear that if Defendants properly calculated the relevant time period, the denial of Plaintiff's appeal did not violate his Due Process rights. "A party cannot create a due process claim by ignoring established procedures." *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004). It is a "logical proposition that a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982). Therefore, if procedural protections exist, "the state cannot be accused of withholding them in a section 1983 suit." (*Id.*)

In this case, Plaintiff was served with a "notice of violation and order to correct violation," which explicitly offered the opportunity to appeal "within 14 calendar days of the date of issue of the Notice and Order." (Notice and Order (Dkt. No. 18 at 6).) Thus, there was a procedure that explicitly offered notice and the opportunity for Plaintiff to be heard. Furthermore, the notice clearly indicates that Plaintiff would not face any sanction, in the form of fines or otherwise, unless he failed to appeal the determination and failed to correct the violation within the fourteen day window. (*Id.*)

ORDER – 6

Second, the calculation employed by Defendant Nordby was not erroneous. In accordance with the protocol for service set forth in the city code, Defendant Nordby posted the notice on Plaintiff's property and sent him a copy by certified mail. (Nordby Decl. ¶ 9 (Dkt. No. 18 at 2); Garner Dep. 41 (Dkt. No. 19 at 24).) Plaintiff argues that his August 6, 2003 appeal was timely because the notice of violation stated the fourteen day window would begin to accrue upon the date of "issue," a term the Federal Way City Code, in Chapter 22, defines as follows:

> Issuance, when used with respect to a decision of the director of community development services or a decision of the hearing examiner issued under this chapter, means the date that is three days after the date the written decision of the director or hearing examiner is mailed.

FEDERAL WAY CITY CODE, 22-1. The problem with this argument is that the "notice and order" Plaintiff received is a product of Chapter 1, Article III of the city code, not the zoning provisions of Chapter 22. The definition of "issuance" set forth above explicitly limits itself to certain decisions, not of the kind at issue here, that are "issued under [the zoning] chapter." (*Id.*) The definitions enumerated in Chapter 1 do not include a definition for the term "issuance." FEDERAL WAY CITY CODE, 1-15. The absence of an explicit instruction, like that in Chapter 22, invites the inference that the term "issuance" in Chapter 1 means simply the point in time when the code compliance officer effects service, thereby making its determination public and available to the affected party. Therefore, the "notice and order" was "issued" on July 22, 2003, and Plaintiff's August 6, 2003 appeal was untimely, based on the fourteen day limit and the computation of time principles in Chapter 1, section 1-2 of the city code.

This interpretation of the code is consistent with the determinations made by both the code compliance officer and the city attorney, as to the timeliness of Plaintiff's appeal. Furthermore, it is worth noting that the action required of Plaintiff was hardly onerous; availing himself of the appeal process simply required Plaintiff to file a written notice of appeal and a refundable fee. FEDERAL WAY CITY CODE 1-19. In sum, there is no basis for finding a violation of Plaintiff's right to due process.

ORDER – 7

### III. CONCLUSION

Because Plaintiff suffered no violation of either his state or federal constitutional right to due process, his claim that the city failed to properly train or supervise Defendant Nordby must also fail. Furthermore, it is unnecessary to decide whether Defendants' actions were protected by qualified immunity or whether Plaintiff asserts a constitutionally cognizable property interest. His failure to avail himself of the reasonable process afforded renders his due process claim lifeless from its inception.

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 17) is GRANTED, and Plaintiff's cross-motion for summary judgment (Dkt. No. 21) is DENIED. The Clerk is instructed to close this case.

SO ORDERED this 29th day of November, 2007.

/s/ John C. Coughenour

John C. Coughenour
United States District Judge

ORDER – 8